### HENDRIX *et al. v.* LUMMUS & WEBB.

1. If two individuals, having no relation as partners, purchase personal property, and execute their joint note, containing a mortgage clause, for the purchase-price, the mere fact that they may be joint owners of the property will not authorize one of them, without the consent of the other, to sell the property to the original vendors in part payment of the purchase-price, notwithstanding the one making the sale may believe that the other has absconded.

2. The verdict was not demanded by the evidence, and the error in the charge required a new trial.

FEBRUARY 20, 1914.

Complaint. Before Judge Morris. Milton superior court. December 14, 1912.

Lummus & Webb, a firm composed of W. A. Lummus and Jim Webb, instituted an action against George F. Hendrix and J. J. Webb for $125, alleged to be the balance due on a promissory note, a copy of which was attached to the petition. The note was executed under seal by both of the defendants in favor of the plaintiffs. By its terms the makers stipulated that "we, or either of us, promise to pay" the payees therein named $475. It was therein recited, that each maker waived his right to a homestead; and that the note was given to cover the purchase-money of two described mules, and that, for the purpose of securing the debt, the makers "do hereby mortgage, sell, and convey" the mules unto the plaintiffs. The defendants filed a joint answer, admitting the execution of the note, but denying the other allegations of the petition. The answer set up additionally that J. J. Webb signed the note as surety, and that Hendrix signed it as principal, and alleged that the former was in no sense liable unless the principal was liable; also, that the note was given for the purchase-money of the mules, and that the plaintiffs, without the consent of Hendrix, on a designated date, before maturity of the note, took possession of the mules and sold them without Hendrix's consent, and that this action upon the part of plaintiffs amounted to a full payment of the

note and a discharge of the defendants from any further liability thereon; and that the mules were worth as much at the time the plaintiffs took them back as they were at the time of the purchase.

At the trial the defendants, having admitted the execution of the note, assumed the burden of proof. It appeared from the evidence that the mules were sold by the plaintiffs, and that the note was executed by the defendants as alleged in the petition; but the evidence was conflicting as to whether they were sold to Hendrix with Webb as surety, or to Webb with Hendrix as surety; both sides contending that one was principal while the other was surety. Hendrix was making a crop on the land of J. J. Webb. In the fall, before the crop was gathered and before the note was due, Hendrix went off on a visit. Webb, suspecting that he would not return, called upon the plaintiffs and advised them to go and get the mules. Upon this advice the plaintiffs sent for the mules. The evidence in their behalf was to the effect that the mules when taken back were repurchased from J. J. Webb for $350, and that this amount was credited on the note, which left the balance sued for; while the evidence in behalf of the defendants was to the effect that there was no resale or agreement that the mules should be taken at the price contended for by plaintiffs. When Hendrix returned, after an absence of three or four days, before the note was due, he found that the mules were gone, and was informed by J. J. Webb that the plaintiffs had them. He testified, that they were taken without his knowledge or consent, that he had not absconded, but had gone off to make financial arrangements to pay the note which was not then due, and that his absence continued only for three or four days, his family in the meantime remaining at home. The evidence was conflicting as to the value of the mules at the time they were taken in charge by the plaintiffs. The testimony of the defendants tended to show that they were worth as much as when originally purchased, and that of the plaintiffs tended to show that they were not so valuable.

A verdict was returned in favor of the plaintiffs. The defendants' motion for a new trial was overruled, and they excepted. Other facts sufficiently appear from the opinion.

J. P. Brooke, for plaintiffs in error.

24

ATKINSON, J. 1. Several grounds of the motion for new trial complain of the charge wherein the judge instructed the jury to the effect that if they should find that defendant Webb delivered the mules to the plaintiffs to be credited on the note at an agreed value, both defendants would be liable for the balance due on the note, after allowing such credit; and another charge to the effect that if the mules were delivered by Webb, but that the value was not agreed upon, both defendants would be liable for the difference between the market value of the mules and the amount specified in the note. These portions of the charge proceed upon the theory that whatever Webb did with respect to the mules would be binding on Hendrix, though he may not have authorized or participated in the transaction. According to the evidence, Hendrix did not do either. The relation of landlord and tenant existed between them, but he was not a general partner with Webb. If it could be said that the form of the note, and the evidence relative to the circumstances attending the purchase of the mules, constituted the defendants joint owners of the mules, this, without more, could not confer power upon one of them to contract away the interest of the other, notwithstanding the object of the sale might have been to pay the purchase-price of the property for which both defendants were jointly and severally liable. 1 Schouler on Personal Property, § 163; Perry v. Granger, 21 Neb. 579 (33 N. W. 261). The charge improperly instructed the jury as to the effect of a sale of defendant Hendrix's property by his landlord without his consent; and also concluded him on the question of a release on account of increased risk, if the jury should adopt the plaintiffs' theory that he was a mere surety. For the reasons indicated, the charge did not properly apply the law to the case. It is unnecessary to discuss any possible remedies that the plaintiffs might have by attachment, foreclosure, or otherwise.

2. As the judgment will be reversed on account of error in the charge, it is unnecessary to deal with the general grounds of the motion for new trial, further than to say that the verdict was not demanded by the evidence.

*Judgment reversed. All the Justices concur.*